# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **EVELYN WILLIAMS**<br>3263 E. Overlook Road<br>Cleveland Heights, Ohio 44118<br><br>*Plaintiff*,<br><br>vs.<br><br>**BARTON MALOW CO.**<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>AND<br><br>**TOM GARZA**<br>26500 American Drive<br>Southfield, Michigan 48034<br><br>*Defendants*. | Case No.<br><br>Judge |
| **COMPLAINT WITH JURY DEMAND** ||

### NATURE OF THE ACTION

1. This is a civil-rights action to redress discriminatory and retaliatory actions taken against Plaintiff Evelyn Williams, a female ironworker, for reporting her coworkers' pattern of sex-based harassment against her. Defendant Barton Malow Co. deprived Evelyn Williams's of her right to equal employment by denying her work assignments and terminating her employment after she experienced and informed her supervisors of dehumanizing mistreatment from her male coworkers.

2. Rather than confront the male coworkers' hostility to Ms. Williams—who was the only female ironworker at her worksite—Barton Malow responded by removing her from the project. Defendants' actions encouraged, reinforced, and echoed its male ironworkers' refusal to treat a female ironworker as an equal.

**PARTIES**

3. Plaintiff Evelyn Williams is a resident of Cuyahoga County, Ohio.

4. Defendant Barton Malow Co. is a Michigan corporation headquartered in Southfield, Michigan. The company was the general contractor for the construction of a hot-briquetted iron (HBI) facility in Toledo, Ohio, where Ms. Williams worked.

5. Defendant Tom Garza is a project manager for Barton Malow Co. He was the project manager overseeing the HBI facility's construction in Toledo, Ohio.

**JURISDICTION AND VENUE**

6. Jurisdiction over federal claims under Title VII of the Civil Rights Act of 1964 is asserted under 28 U.S.C. §§ 1331 and 1343(a)(4).

7. The Court has jurisdiction over state-law claims under 28 U.S.C. § 1367.

8. The Court has jurisdiction over the parties under 28 U.S.C. § 1391, and venue is proper here because the events at issue took place in this jurisdiction.

**FACTS**

**Evelyn Williams, an experienced journeyman ironworker, secures a job at a large construction project working for Barton Malow.**

9. Evelyn Williams is an ironworker.

10. Williams has more than 23 years of experience as an ironworker.

11. Within the trade, Williams is classified as a journeyman. When she started as an ironworker decades ago, she completed an apprenticeship. Ironworking apprentices receive training in the trade by working and gaining experience under the tutelage of journeymen. Upon graduating, apprentices reach journeyman status, at which point they can perform ironworking tasks without supervision.

12. Williams is a member of Iron Workers Local Union No. 17, located in Cleveland, Ohio.

13. Williams's union colleagues describe her as professional, conscientious and a reliable individual, and that she has consistently demonstrated a high degree of work ethic.

14. In May 2019, Iron Workers' Local No. 17 referred Williams to a job at a project in Toledo, Ohio with Barton Malow Co., a large construction company with over 1,000 employees.

15. The project was constructing a hot-briquette iron (HBI) production plant for Cleveland-Cliffs Inc., a Cleveland-based iron-ore mining company. The project broke ground in or around April 2018.

16. When the project started, the Cleveland-Cliffs HBI plant project was estimated to take two years to complete. As of this Complaint, the project is still ongoing. The estimated investment in the entire project is about $1 billion.

17. Williams started work as a Barton Malow employee at this project on or about May 20, 2019. She completed a worksite orientation and was assigned to an ironworking crew.

18. Williams's first few weeks at the project went without incident. Williams worked on a tower structure during her first week. The next week she worked on building galvanized steel stairs.

19. As has been typical in Williams's experience as ironworker, there were very few women working at the Cleveland-Cliffs HBI-plant project. According to one industry publication, *The Ironworker*, women account for fewer than 4% of the construction-trades workforce.[1] While there were many workers working at the project across different worksites, Williams saw only two other female workers at the project.

20. During Williams's time working for Barton Malow at the Cleveland-Cliffs HBI plant project, no manager, foreman, or other coworker informed her of any concerns or issues with her work performance.

---

[1] *Iron Workers' Be That One Guy: Diversity, Harassment and Retention*, The Ironworker, August 2019, at 35–38, *available at* http://onlineeditions.themosaicteam.com/publication/?m=&l=1&i=614262&p=34.

**Ms. Williams experiences flagrant sexual harassment and reports it to her foreman.**

21. On or about June 4, 2019, a male ironworker named Larry, sexual harassed Ms. Williams.

22. Williams was assigned to bolt up steel and correct issues on ironwork that another person had done earlier. As she did this, Larry yelled a series of sexually explicit remarks at Williams.

23. Larry's harassment of Williams escalated with him shouting at her, "You enjoy riding that joystick?" Williams initially did not respond because she didn't know Larry was talking to her. Larry shouted louder, "Get off that joystick. Stop riding that joystick!"

24. Williams paused the work she was doing and asked Larry, "Is there a problem?" Larry responded that there was no problem. Williams replied, "Well, let me know if there is a problem." Moments later, Larry shouted again, "**Do you need some anal oil to pull the joystick out of your ass?**"

25. At this point, Williams could no longer ignore the issue.

26. During her next break, Williams reported the incident to Darryl Williams, a Barton Malow general foreman. At the foreman's instruction, Ms. Williams completed a written incident report. She was sent home with pay that afternoon while the incident was investigated.

27. The next day, on or about June 5, when Ms. Williams returned to work, she was directed to gather her tools and go to a nearby work trailer. When she arrived at the trailer, she met with Barton Malow's senior project manager, Tom Garza. The meeting was short, lasting only about ten minutes.

28. In that meeting, Garza informed Williams that, based upon an internal investigation, Larry had been removed from the Cleveland-Cliffs' HBI plant project.

29. During the same meeting, Garza told Williams that she would be moved to a different worksite within the Cleveland-Cliffs' HBI plant project. Garza did not state the reason for moving Williams to the new worksite. During the meeting, he said nothing to suggest that Barton Malow's foremen and managers had any concerns with Williams's work performance.

30. After the meeting, Williams went to her new worksite, a few minutes away from her initial worksite. Two apprentice ironworkers gave Williams a tour of the new site. Based on her introduction to the site, Williams believed she would be able to step into the work there without any disruption.

31. Later that same day, Garza came to the worksite to see Williams and asked how she was doing. Williams responded that things that day seemed to be going okay. Garza told Williams that she could reach out to him if an issue came up.

### After Ms. Williams's sexual-harassment report, Barton Malow's foremen refuse to provide her further work assignments.

32. Barton Malow's foremen at the Cleveland-Cliffs' HBI plant project ordinarily provided ironworkers team assignments and responsibilities during a morning meeting.

33. At the start of the week after Ms. Williams's sexual-harassment report against Larry, on or about June 10, 2019, Williams arrived at her worksite ready to begin on a new work assignment with a new team. But Barton Malow's foremen denied her that opportunity.

34. During the morning meeting on or about June 10, 2019, the general foreman at the new worksite, George, issued assignments to all ironworkers—except Williams. George assigned Williams to neither a team nor a job.

35. The lack of an assignment for Williams was highly unusual, and others noticed. She was the only ironworker to not get an assignment from the foreman.

36. Even apprentices were given assignments over Williams, a seasoned journeyman. Never before in Williams's ironworking career had she seen apprentices given priority for work assignments over a journeyman.

37. This also marked the first time in Williams's ironworking career that she had reported to a worksite and assigned neither a job nor a task.

38. Before she reported Larry's sexual harassment, Barton Malow's foremen had continually given Williams work assignments without interruption.

39. Other than Williams, each ironworker at her new worksite was male.

40. Since it was so unusual for Williams to not get an assignment, she followed up and confirmed that fact with her foreman. He confirmed that the non-assignment was no mistake.

41. Without work assigned to her, Williams searched for tasks she could do to assist her fellow ironworkers with their assignments. Even though she asked her colleagues how she could help them, they often rejected her offers. Knowing it would improve efficiency and workplace safety, Williams cleared safety hazards, organized materials, and, ultimately, was relegated to picking up debris.

42. For a professional ironworker with 23 years of experience in her trade, being abruptly reduced to unassigned low-level cleaning work for no apparent reason was demeaning and humiliating.

### Ms. Williams reports further harassment to her foreman as Barton Malow's male ironworkers continue to harass and retaliate against her; many refuse to work with her, and one flatulates in her face.

43. Ms. Williams continued to do her best to assist her colleagues, offering help where possible to push the project forward.

44. Many of Barton Malow's predominately male ironworkers at the Cleveland-Cliffs' HBI plant project were aware that Larry had been dismissed from the project because of Williams's report of sexual harassment.

45. While Larry's harassment stopped with his firing, many of Williams's coworkers resented and acted against her because she reported Larry's misconduct. To them, Williams bore the blame for Larry's firing from a significant ironworking project. Upon returning to work at the new worksite—where she was the only female ironworker—Williams became the target of retaliation from Larry's industry colleagues still on the project.

46. On or about June 14, 2019, Williams approached three men working on assembling a stairwell, a job that typically requires four workers. She offered to assist them, but they turned her away.

47. Still looking for ways to help, Williams noticed that some of the materials for the stairwell job were far away. She offered to bring those materials closer. The coworkers on the stairwell agreed that she should move the materials closer.

48. Williams grabbed the materials and walked them toward the stairwell job. When she approached, one of the ironworkers, Dave, turned his back to her. As Williams leaned over to place the materials on the ground where the coworkers had told her, he bent away and intentionally flatulated loudly within a foot from Williams's face.

49. Under the circumstances, it was clear that the timing and direction of the flatulence was no accident. Dave made no attempt to apologize or excuse himself. The fart was an intentional act of harassment directed at Williams, the only female ironworker at the worksite. It was degrading.

50. This incident on the stairwell was deeply dispiriting. Despite the complete lack of direction from her foreman, William had sought out ways to help other ironworkers push the project forward. In return for her efforts, male ironworkers subjected Williams to further harassment and embarrassment.

51. Williams reported the stairwell incident to her general foreman. The foreman said only that he would "speak with" the harasser. Barton Malow's managers and foremen never indicated to Williams that there was a negative consequence for the harassment. Williams never received an update regarding any investigation or discipline related to the incident.

**Ms. Williams escalates reports of continuing harassment and
disparate treatment to project manager Tom Garza—and then
Barton Malow terminates her employment.**

52. During the rest of June 2019, Barton Malow's foremen continued to not assign any work to Ms. Williams. Meanwhile, all the male ironworkers at the Barton Malow worksite—including apprentices—continued to get assignments.

53. During this time, Williams repeatedly asked her foremen for an assignment, to no avail. When she asked her direct foreman why she was not being given an assignment, he responded that there wasn't enough work for her—even though Williams had gotten work assignments consistently before her sexual-harassment report against Larry.

54. As of June 2019, Barton Malow's work constructing the Cleveland-Cliffs HBI plant was still far from complete.

55. As Williams continued to press her foremen for the chance to do some ironwork, the foremen never indicated or suggested there were any concerns with her work performance or workplace conduct.

56. During this time, Williams told her general foreman, George, that she believed that the other ironworkers were refusing to work with Williams because of the sexual-harassment report she made against Larry. The foreman responded only that the site was busy and suggested she fit in where she could—even though the male ironworkers at the site, who were assigned jobs, had made it clear that they would not entertain her offers of assistance.

57. Sensing that her foremen were not taking seriously her reported concerns about the harassment and the disparity in her work assignments, Williams sought to escalate the issues to Garza, the project manager.

58. On or about June 26, 2019, Williams called and left a voice message with Garza to further report the issues up to him—including her foremen's refusal to give her an assignment and the

harassment on the stairwell. She followed up the call with a text message to Garza asking him to call her that evening.

59. Although Williams expressed in her voice message that there were serious issues at the worksite to address, Garza never responded to Williams.

60. On or about June 28, 2019, Williams prepared and sent a letter to the Cleveland-Cliffs HBI plant's mailing address at 330 Millard Avenue, Toledo, Ohio 43605. The letter described discrimination and retaliation she had faced at the Barton Malow project, including Larry's harassment, her foremen's refusal to give her a work assignment, and the harassment on the stairwell.

61. On or about the following Monday, July 1, 2019, Barton Malow terminated Ms. Williams's employment.

62. During that morning, a Barton Malow employee approached Williams at the worksite. With other coworkers nearby and watching, the employee handed Williams her final Barton Malow paycheck and told her that she had been laid off.

63. After receiving news of her termination, Williams walked through the worksite to her car. As she walked, a group of male ironworkers began to spontaneously clap and cheer upon seeing that Williams had been laid off and was departing. Some yelled "bye-bye" and "good riddance" loud enough for Williams to hear.

64. Among those visibly celebrating Williams's dismissal was Dave, the male ironworker who had deliberately harassed Williams by farting in her face on the stairwell.

65. In a trade such as ironworking where teamwork is vital to work success and safety, the male ironworkers' cheering of her firing caused Williams deep dismay and distress. In addition to inflicting needless embarrassment and humiliation, the celebration made it clear to Williams that her male coworkers felt zero regard for her—despite her considerable experience as a journeyman.

66. Other than reporting workplace harassment, Williams did nothing to antagonize her fellow Barton Malow ironworkers. She consistently approached her work with a professional, team-first mindset. Even as Barton Malow's foremen refused to assign Williams work, she still offered to help the other ironworkers.

67. Many of Barton Malow's male ironworkers did not want a female ironworker at *their* worksite—particularly one who had reported workplace harassment by male coworkers.

68. Rather than remedy a sexist workplace culture, Barton Malow ultimately bent to the desires of its male ironworkers. After Williams's dismissal, there were no female ironworkers remaining at the Barton Malow worksite where Williams had worked.

## CLAIM 1
## RETALIATION UNDER TITLE VII
## (AGAINST ALL DEFENDANTS)

69. Plaintiff incorporates all previous allegations.

70. Under 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate in any manner (i.e. retaliate) against an employee because she opposed unlawful discriminatory practices.

71. Under 42 U.S.C. § 2000e-5(f), a person aggrieved by a violation of 42 U.S.C. § 2000e-3(a) may bring a civil action for damages, injunctive relief, attorneys' fees, and any other appropriate relief.

72. Williams filed a charge of discrimination with the Equal Employment Opportunity Commission on August 6, 2019. She received a right-to-sue letter from the Commission on August 24, 2020.

73. Defendants intentionally and maliciously discriminated and retaliated against Williams after she opposed unlawful discriminatory practices.

74. Williams opposed unlawful discriminatory practices, including by:

      a. reporting sexual harassment by Larry, a Barton Malow ironworker;

      b. reporting sex-based harassment by Dave, a Barton Malow ironworker, in the stairwell incident alleged above; and

      c. reporting to her foremen and escalating to Defendant Garza her foremen's persistent refusal to provide her work assignments while giving assignments to each male ironworker at her worksite.

75. Defendants discriminated and retaliated against Williams by refusing to give her work assignments while giving assignments to every other ironworker at her worksite, including apprentices.

76. Defendants discriminated and retaliated against Williams by failing to take adequate remedial action in response to the harassment during the stairwell incident alleged above.

77. Defendants discriminated and retaliated against Williams by terminating her employment.

78. Defendant Barton Malow is vicariously liable for Defendant Garza's and its other employees' acts toward Williams.

79. As a direct and proximate result of Defendants' retaliation, Williams has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages and benefits, and other terms, privileges, and conditions of employment.

80. Williams is entitled to punitive damages and attorneys' fees based on the Defendants' conduct.

81. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## CLAIM 2
### SEX DISCRIMINATION UNDER TITLE VII
#### (AGAINST DEFENDANT BARTON MALOW COMPANY)

82. Plaintiff incorporates all previous allegations.

83. Under 42 U.S.C. § 2000e-2(a), it is an unlawful employment practice for an employer to discriminate in any manner against an employee because of her sex.

84. Under 42 U.S.C. § 2000e-5(f), a person aggrieved by a violation of 42 U.S.C. § 2000e-2(a) may bring a civil action for damages, injunctive relief, attorneys' fees, and any other appropriate relief.

85. Defendant Barton Malow intentionally and maliciously discriminated against Williams because of her sex, including by:

    a. refusing to assign her work while giving assignments to every other ironworker at her worksite, including apprentices, all of whom were male;

    b. failing to take adequate remedial action in response to Williams's report of harassment during the stairwell incident alleged above, and

    c. terminating her employment while retaining male ironworkers, including apprentices.

86. Defendant Barton Malow is vicariously liable for Defendant Garza's and other employees' acts toward Williams.

87. As a direct and proximate result of Defendants' retaliation, Williams has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages and benefits, and other terms, privileges, and conditions of employment.

88. Williams is entitled to punitive damages and attorneys' fees based on the Defendants' conduct.

89. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 3
### RETALIATION UNDER OHIO REV. CODE § 4112.02(I) AND 4112.99
### (AGAINST ALL DEFENDANTS)

90. Plaintiff incorporates all previous allegations.

91. Under Ohio Rev. Code § 4112.02(I), it is an unlawful employment practice for any person to discriminate in any manner (i.e. retaliate) against an employee because she opposed unlawful discriminatory practices.

92. Under Ohio Rev. Code § 4112.99, whomever violates Ohio Rev. Code § 4112.02(I) is subject to a civil action for damages, injunctive relief, and any other appropriate relief.

93. Defendants intentionally and maliciously discriminated and retaliated against Williams after she opposed unlawful discriminatory practices.

94. Williams opposed unlawful discriminatory practices, including by:

    a. reporting sexual harassment by Larry, a Barton Malow ironworker;

    b. reporting sex-based harassment by Dave, a Barton Malow ironworker, in the stairwell incident alleged above; and

    c. reporting to her foremen and escalating to Garza her foremen's persistent refusal to provide her work assignments while giving assignments to each male ironworker at her worksite.

95. Defendants discriminated and retaliated against Williams by refusing to give her work assignments while giving assignments to every other ironworker at her worksite, including apprentices.

96. Defendants discriminated and retaliated against Williams by failing to take adequate remedial action in response to the harassment during the stairwell incident alleged above,

97. Defendants discriminated and retaliated against Williams by terminating her employment.

98. Defendant Barton Malow is vicariously liable for Defendant Garza's and its other employees' acts toward Williams.

99. As a direct and proximate result of Defendants' retaliation, Williams has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages and benefits, and other terms, privileges, and conditions of employment.

100. Williams is entitled to punitive damages and attorneys' fees based on the Defendants' conduct.

101. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 4
### SEX DISCRIMINATION UNDER OHIO REV. CODE § 4112.02(A) AND 4112.99
### (AGAINST ALL DEFENDANTS)

102. Plaintiff incorporates all previous allegations.

103. Under Ohio Rev. Code § 4112.02(A), it is an unlawful employment practice for an employer to discriminate in any manner against an employee because of her sex.

104. Under Ohio Rev. Code § 4112.99, whomever violates Ohio Rev. Code § 4112.02(A) is subject to a civil action for damages, injunctive relief, and any other appropriate relief.

105. Defendant Barton Malow intentionally and maliciously discriminated against Williams because of her sex, including by:

    a. refusing to give her work assignments while giving assignments to every other ironworker at her site, including apprentices, all of whom were male;

    b. failing to take adequate remedial action in response to Williams's report of harassment during the stairwell incident alleged above, and

    c. terminating her employment while retaining male ironworkers, including apprentices.

106. Defendant Barton Malow is vicariously liable for Defendant Garza's and other employees' acts toward Williams.

107. As a direct and proximate result of Defendants' retaliation, Williams has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages and benefits, and other terms, privileges, and conditions of employment.

108. Williams is entitled to punitive damages and attorneys' fees based on the Defendants' conduct.

109. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 5
### AIDING AND ABETTING RETALIATION AND DISCRIMINATION
### UNDER OHIO REV. CODE § 4112.02(J) AND 4112.99
### (AGAINST ALL DEFENDANTS)

110. Plaintiff incorporates all previous allegations.

111. Under Ohio Rev. Code § 4112.02(J), it is an unlawful employment practice for any person to aid, abet, incite, compel, or coerce the doing of any unlawful discriminatory practice.

112. Under Ohio Rev. Code § 4112.99, whomever violates Ohio Rev. Code § 4112.02(J) is subject to a civil action for damages, injunctive relief, and any other appropriate relief.

113. Defendants aided, abetted, incited, compelled, or coerced the unlawful discriminatory practices against Williams alleged above.

114. As a direct and proximate result of Defendants' actions, Williams has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages and benefits, and other terms, privileges, and conditions of employment.

115. Williams is entitled to punitive damages and attorneys' fees based on the Defendants' conduct.

116. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests the following relief from the Court:

- A. Declare that Defendants' acts and conduct constitute violations of federal and state law;

- B. Enter judgment in Evelyn Williams's favor on all claims for relief;

- C. Award Williams full compensatory damages, economic and non-economic, including, but not limited to, damages for back pay, front pay, pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that he has suffered and is reasonably certain to suffer in the future;

- D. Award Williams punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights;

- E. Award pre-judgment and post-judgment interest at the highest lawful rate;

- F. Award Williams her reasonable attorneys' fees (including expert fees) and all other costs of this suit;

- G. Award all other relief in law or equity to which Williams is entitled and that the Court deems equitable, just, or proper.

## JURY DEMAND

Plaintiff Evelyn Williams demands a trial by jury on all issues within this complaint.

>Respectfully submitted,
>
>THE CHANDRA LAW FIRM LLC
>
>*/s/ Subodh Chandra*
>Subodh Chandra (OH 0069233)
>Patrick Haney (OH 0092333)
>Brian D. Bardwell (OH 0098423)
>The Chandra Law Building
>1265 W. 6th Street, Suite 400
>Cleveland, Ohio 44113-1326
>216.578.1700 Phone
>216.578.1800 Fax
>Subodh.Chandra@ChandraLaw.com
>Patrick.Haney@ChandraLaw.com
>Brian.Bardwell@ChandraLaw.com
>
>*Attorneys for Plaintiff Evelyn Williams*