

THE CHANDRA LAW BUILDING
1265 W. 6TH STREET, SUITE 400
CLEVELAND, OH 44113.1326
216.578.1700 OFFICE
216.578.1800 FAX
WWW.CHANDRALAW.COM

November 27, 2019

*Via email to kimberly.nicholson@eeoc.gov*

Kimberly Nicholson
Equal Employment Opportunity Commission
Detroit Field Office
477 Michigan Avenue, Room 865
Detroit, MI 48226-9704

Re: Charge No. 471-2019-04100 – Supplemental information from Evelyn Williams

Dear Ms. Nicholson:

We write to provide the Equal Employment Opportunity Commission with additional information in support Evelyn Williams's sex-discrimination and retaliation charge against Barton Malow and Cleveland-Cliffs, Inc. The information in this letter supplements the charge that Ms. Williams filed on August 6, 2019 — to which the respondent has provided no response.

**I.  Evelyn Williams, a journeyman iron worker, secures a job at a large construction project working for Barton Malow.**

Evelyn is an iron worker with 23 years of experience. She is a journeyman, meaning she completed an apprenticeship and can perform ironworking tasks without supervision. Colleagues familiar with her work describe her as "professional, conscientious and a reliable individual" — and that she "has consistently demonstrated a high degree of work ethic."[1]

In May 2019, Iron Workers' Local No. 17 referred Williams to a job in Toledo, Ohio with Barton Malow, a large construction company. The job was constructing a hot-briquette iron production plant for Cleveland-Cliffs,[2] a Cleveland-based iron-ore mining company. The project broke ground in April 2018 and was estimated to take roughly two years to complete.[3] The total investment in the project is expected to be approximately $830 million.

Williams started work at this project on May 20, 2019. The first few weeks proceeded without incident. She went through orientation and was assigned to a crew. In her first week, Williams

---

[1] Letter from Iron Workers' Local No. 17 (Nov. 11, 2019), attached as **Exhibit 1**.

[2] Cleveland-Cliff's description of this project is on its website, at http://www.clevelandcliffs.com/English/about-us/operations/ToledoOHHBIPlant/default.aspx

[3] *Id.*



Page 1 of 5

worked on a tower structure — 260 feet off the ground. Williams spent her second week building galvanized steel stairs. There were no issues, and she worked well with the co-workers with whom she was working.

II. **Evelyn Williams reports her co-worker's persistent sexual harassment, the company initially responds by firing the sexual harasser.**

Around June 4, 2019, a male iron worker at the site, Larry,[4] began to sexual harass Williams. She was assigned to bolt up steel and correct bolting issues on work that had already been done. As she did this, Larry yelled many sexually explicit things at Williams over a few days. This culminated with an ugly exchange.

Larry shouted at Williams, "You enjoy riding that joy stick?" Williams didn't respond because she didn't know Larry was talking to her. So Larry shouted louder, "Get off that joy stick. Stop riding that joy stick!" Williams stopped the work she was doing and asked Larry, "Is there a problem?" Larry responded that there was no problem, and Williams replied, "Well, let me know if there is a problem." Moments later, Larry shouted, "**Do you need some anal oil to pull the joy stick out of your ass?**"

At this point, Williams could ignore the issue no longer.

During a break, she reported the incident to the general project foreman, Darryl Williams. A few minutes later, he instructed Williams to complete an incident report, and she did. Williams was sent home with pay that afternoon, as the incident was investigated.

Williams returned to work the next day. Darryl Williams directed her to gather her tool, and then drove her to a work trailer. There she met with senior project manager Tom Garza. Mr. Garza informed Williams that, based on the investigation, Larry was fired from the project.

In their meeting, Garza added that Williams would be moved to a different worksite. He did not explain this decision. After the meeting, she went to the new site, which was only a few minutes away. That day, two apprentices gave her a tour. After seeing the new site, Williams believed she would be able to step into the work there without any further disruption.

III. **Co-workers and supervisors retaliate against Williams for reporting sexual harassment.**

At many workplaces, the story would have ended upon the harasser's firing. But that did not happen at this Barton Malow project.

While Larry's harassment stopped with his firing, many of Ms. Williams's co-workers resented and acted against her because she reported their colleague's misconduct. The workers at the new worksite were generally aware of the circumstances surrounding the firing. To them, Williams bore the blame for Larry's firing from a significant project. Upon returning to work at the new site — where she was the only female iron worker — Williams became the target of retaliation from Larry's close industry colleagues.

---

[4] Last name unknown.

The beginning of the next week, on June 10, Williams returned to work eager to move on to a new assignment. But the general foreman at the new worksite, George,[5] refused to give Williams an assignment — even though she was an experienced iron worker, and there was work to be done. She was the only iron worker who did not get an assignment. Apprentices were given priority for jobs over Williams, an experienced journeyman.

It was highly unusual for Williams to not get an assignment, so she confirmed her non-assignment with the foreman. Williams proactively attempted to find jobs she could assist with. Williams walked around the worksite and asked co-workers if she could help them. (The co-workers repeatedly turned her away.) She cleared safety hazards, organized materials, and ultimately, Williams was relegated to picking up debris. This was the first time in Williams's 23-year career that, despite reporting to an ironworking job, she received no assignment. For a woman who takes pride in her work, this was humiliating and embarrassing.

A few days later, she approached three men on a stairwell doing a four-person job. She asked to help, and she again was told "no" — even though they were one person short. But she noticed that some of the job materials were far away, so she offered to bring the materials closer. This time, the co-workers acquiesced. Williams grabbed the materials and walked them over. As she approached, one co-worker, Dave,[6] turned his back to her. As Williams bent down to put the materials on the ground, this co-worker deliberately aimed and timed a loud fart within a foot from Ms. Williams's face. No apology followed.

### IV. After reporting disparate treatment and retaliation against her, Barton Malow lays off Evelyn Williams — to the applause of co-workers who took actions against her.

Deeply humiliated, Ms. Williams reported this incident to her general foreman, George. The foreman said he would speak with Dave. Otherwise, there were no negative repercussions for Dave.

Meanwhile, Williams continued to not get work assignments, despite pressing her direct foreman, Lohn (sp?),[7] to assign her work. She continued to help out in whatever space and capacity she was permitted, but it was not the ironworking job she was trained or hired to do. She endured this for a few more weeks.

On June 26, 2019, Williams called project manager Tom Garza during a break to elevate the problem with her lack of assignments. She left him a message, but her call was never returned. Williams also complained to her general foreman about her lack of assignments.

Sensing nothing was happening, Williams wrote a grievance letter addressed to the project's address — 330 Millard Avenue, Toledo, OH 43605 — to the attention of Human Resources. Her letter[8] relayed the details of what had occurred. In the first paragraph, Williams identified the facts as pertaining to sexual harassment, sex-discrimination, and retaliation. She sent this letter

---

[5] Last name unknown.

[6] Last name unknown.

[7] Last name unknown.

[8] Attached as **Exhibit 2**.

by certified mail.[9] The issues raised in this letter were the same ones Williams had raised verbally to her foreman (Lohn) and general foreman (George).

On July 1, 2019, Williams was laid off. A man named Romeo, believed to have been a superintendent, met Williams that morning at her new worksite. With co-workers nearby, Romeo handed Williams her final paycheck and said aloud that she had been laid off. No other employees were laid off at that time.

As she walked back to her car through the work site, eight to ten male co-workers cheered and applauded her firing, yelling "bye-bye" and "good riddance." Those cheering included Dave — the man who farted inches from Williams's face — and Lohn, Williams's direct foreman. She left the site dejected and humiliated.

Williams later raised her workplace issues in a letter to her international union[10] — International Association of Bridge, Structural Ornamental and Reinforcing Iron Workers — which has previously launched initiatives aimed at increasing female participation[11] in what is a male-dominated workforce. [12]

Sexual harassment is an industry-wide, systemic problem. Union leaders have recognized it as such. [13] But translating that top-level concern into a reality requires changes to workplace cultures such as Barton Malow's. Ms. Williams brings her charge to the EEOC hoping to spur that kind of change. She does so with the expressed backing of her local union.[14]

Evelyn Williams presents a strong charge of sex-discrimination and retaliation. She faced problems with work assignments and co-worker interactions *only after* she reported her co-worker's sexual harassment. Then she was laid off after she reported the retaliation she was experiencing. Although characterized by the company as a lay-off, the termination's timing and the strength of her work show that she was terminated because she opposed workplace sexual harassment and retaliation.

---

[9] Williams later learned the receipt of her letter had been refused. She followed up by mailing her complaint to Barton Malow's human-resources department.

[10] Attached as **Exhibit 3**.

[11] *See Iron Worker Women*, International Association of Bridge, Structural Ornamental and Reinforcing Iron Workers, http://www.ironworkers.org/become-an-ironworker/iron-worker-women (accessed Nov. 20, 2019).

[12] *Iron Workers' Be That One Guy: Diversity, Harassment and Retention*, The Ironworker, August 2019, at 35–38, attached as **Exhibit 4** ("Women account for few than 4% of the construction trades workforce.").

[13] *Id.* at 37 (identifying workplace harassment as "the greatest workplace hazard of our generation.")

[14] Letter from Iron Workers' Local No. 17 (Nov. 19, 2019), attached as **Exhibit 5**.

We appreciate your focus and efforts on this investigation. If there is any other information Ms. Williams can offer to assist you, please contact me at (216) 578-1700 or at Ashlie.Sletvold@ChandraLaw.com.

Very truly yours,

Ashlie Case Sletvold



# Iron Workers' Local No. 17

1544 EAST 23RD STREET • CLEVELAND, OHIO 44114-4290
PHONE: 216/771-5558 • FAX (216) 771-8242 • 1-800-774-5558

AFFILIATED WITH AFL-CIO



RECEIVED NOV 1 8 2019

BY: ......................

November 11, 2019

RE:  Evelyn Williams

To Whom It May Concern:

Evelyn Williams was initiated into Iron Workers Local No. 17 on July 1, 1996. During these years she has consistently demonstrated a high degree of work ethic; she is professional, conscientious and a reliable individual. As a union member, she has maintained an excellent work record and has worked on many major area projects without error or incident.

On a personal level, I find Evelyn Williams to be sincere, honest and a person of good character. Should you have further concerns regarding this individual, please do not hesitate to contact me.

With this I remain,

Fraternally yours,

Richard Jordan
FST/Business Manager

**EXHIBIT 1**

Evelyn Williams
3263 East Overlook Road
Cleveland Heights, Ohio 44118
216/233-0448
eviewilliams11@gmail.com

June 28, 2019

Cleveland Cliffs HBI
330 Millard Avenue
Toledo, Ohio 43605

Attention:  Human Resources

TO WHOM IT MAY CONCERN:

Please find attached below work-related grievances which I feel have yet to be addressed.  Your attention to the below attached document is greatly appreciated.

Should you have any questions or concerns, please contact me at the email and/or address listed above.

Kindest regards,

*Evelyn Williams*

Evelyn Williams

**EXHIBIT 2**

Below please find a copy of the description of what happened regarding onsite incidents pertaining to the facts about retaliation, sexual discrimination harassment, sex-based discrimination, work site situations and sex discrimination, biased employment practices.

Overview

On May 17, 2019 I was referred to a site job thru my Local Union 17, to work as a certified iron worker (Certificate No. 1343072, in Toledo, Ohio at the Cleveland Cliffs HBI, Barton Marlow, contractor - located at 330 Millard Avenue, Toledo, Ohio. I reported to this work site on May 20, 2019 to Darryl Williams, General Project Manager.

Then I proceeded to orientation where I was instructed about policies and procedures. After orientation, I met with Darryl Williams, who assigned me to a "gang" (crew). After meeting with Darryl I proceeded to my assigned work area located on a tower, 260 ft above ground to do iron work my first week. My first week working with the gang was fantastic. There was a collegial spirit wherein I could call on my co workers for assistance, if needed. In fact, I needed a tool and it was graciously provided.

The following week, I was assigned on the ground, building galvanized steel stairs. I did this for one (1) week. The stairs were needed in order to get to the higher levels of the tower. There were no problems; everybody got along.

The following week three (3), I was assigned to bolt the steel - make corrections to bolting another worker had done incorrectly. During this time period, problems started:

1. On **June 4, 2019**, I was given a partner to work with me by the name of Anthony. Our detail was to bolt up the steel and to make corrections on bolts which have been put in previously, incorrect.
2. While doing the job, an ironworker by the name of "Larry", began shouting, "you enjoying riding that joy stick?" I ignored him because I had no idea he was talking to me; so he began shouting louder, "get off that joy stick, stop riding that joy stick!"
3. I then stopped working and asked "Larry", 'is there a problem?' He replied, "I don't have a problem". I responded, 'well let me know if there is a problem.'
4. Larry began shouting "do you need some anal oil to pull the joy stick out of your ass?"
5. By then I knew I needed to report him.
6. I reported same to the project general foreman, Darryl Williams during break.
7. I returned to work after break, 15 minutes later, I was called off the steel to the front office to complete an incident report which I signed.
8. I was sent home for the rest of the day so that this incident could be investigated.

On **June 5, 2019**, I returned to work and was told to go to the gang box and get my tools by Darryl Williams. He transported me to the trailer to meet with Tom, the project manager.

1. He proceeded to inform me of the results of the investigation pertaining to the incident indicated above. As a result, the co-worker was terminated and that I was removed to be removed from the site.
2. I was transported to my car to follow Darryl Williams to the new site location, which was approximately three minutes from the original site.

3. After that, at the new site, two apprentices showed me the ropes of what type of work they are doing.
4. During lunch, project manager, Tom came to the location and inquired as to how I was doing. I replied, "the five hours I've been here seem to be okay." I was under the impression that I was gong to do the work the apprentices showed me which was being done at that site from hence forth.

On **June 10, 2019**, at the start of the shift, I was never given any tasks or details to complete. For example, at the start of the day, each individual is given a detail. So I just followed my co workers to their work areas to try to fit in. It didn't work out well because no one talked to me, and there was nothing to do. The job was full. I initiated my own work, for example, I would clear safety hazards, organizing skids with parts on them and pick up debris from the area and walkways, informing my co workers that I was available as a iron worker to do what was needed per the job description.

On **June 14, 2019**, I noticed that a crew was one man short and so I walked over to the three co workers to include myself on the job. I was turned away by one worker who informed me that "I don't need no help." I was persistent to help with something, so I offered to bring the needed materials closer to them. They agreed; however, one guy named "Dave" in the group, said "sure Bud ... thanks dude."

Accordingly, I proceeded to carry pieces of steel closer to co workers as "Dave" watched me. As I brought the pieces over, he waited until I got six inches close to him to bend down to set the piece down – he turned his back and back and passed gas in my face, loudly in front of the other two guys, who witnessed them incident. He never apologized. I reported him to "George", the head foreman. He said that he would "talk to him" about it. From June 10 to date, I have yet to receive any detailed work.

On June 26, 2019, I called Tom on my lunchbreak, project manager and informed him to contact me and that it was very important. I have not received a call yet. I have complained to "George", head foreman at my site about this situation, retrieving trash and that I have deliberately been alienated from assignments at this site. His reply, "work is slow right now."

Evelyn Williams
*Evelyn Williams*

July 18, 2019

Evelyn Williams

3263 E. Overlook Rd

Cleveland Hts, Ohio 44118

eviewilliams11@gmail.com

216-233-0448

Mr. Eric Dean

General President

International Association of Bridge, Structural Ornamental and Reinforcing Iron Workers

1750 New Your Avenue NW Suit 400

Washington, DC 20006

My name is Evelyn Williams, Book #1343072. I am a skilled tradesman, iron-worker from local 17# the International Association of Bridge, Structural, Ornamental and Reinforcing.

I have been a member for 23 years with Union local #17 and in good standing. I am from Cleveland Ohio. I am a Black/African American Female.

On May 17th 2019 I was referred to Local #55 Barton Malow (Contractor) the Contractor told me to report to work on May 20th 2019 at 7:00 a.m. Location address across the street from 3135 Front Street Toledo, Ohio. I started by attending orientation, for a couple of hours, later began working on the site after Darryl Williams assigned me to a gang up on the tower area. I began by showing an apprentice how to weld galvanized flooring plates, I then moved on to welding hand

EXHIBIT
3

rails for stairs. The job was going great. The next week I was given a detail from Darryl Williams to report to Mr. Wallace on the ground to build stair wells that was great doing Iron Work which I was sent to the site to do. Next detail given by the Foreman Mr. Wallace was to go up on steel and bolt up, bolt up the connections of steel, for one week that went well. On June 4th 2019 I was given a partner to work with me by the name of Anthony. Our detail was to bolt up the steel and make corrections to the bolts that had been previously put in by other workers. After 2 hours the work day, an iron worker out of Local 55 by the name of Larry began shouting "You are ignoring riding that joy stick. I ignored him because I had no idea he was talking to me because it was a lot of other workers talking to me because it was talking to me, because it was a lot of other workers around. So he then began shouting louder right below me looking up at me, "get off that joy stick", stop riding that joy stick. "I then stopped working and asked Larry is there a problem? He replied on I don't have a problem. "I told him to let me know if there is a problem. "Larry began shouting even louder do you need some anal oil to pull the joy stick out of your ass?" By then I knew I needed to report him. I reported everything to the project general Foreman Darryl Williams during beak time. I returned to work after five minutes, my two foreman's Mr. Wallace & Clint (don't know his last name) began harassing me, ten minutes later Superintendent called me off the steel to go and fill out an incident report, which I signed my name on the report, after I was sent home for the day so that the incident could be investigated by Tom Garza, project manager of Cleveland Cliffs HBI

On June 5th I returned to work and was told by Darryl Williams to go get my tools from the gang box. Darryl Williams transported me to meet with Tom Garza, Project manager. Tom Garza informed me of the results of the investigation of the incident of sexual harassment and that a witness came forth with a written statement by the name of Anthony. Tom Garza informed me

that the offender Larry has now been terminated from the site and I will be removed to a different connecting site across the street. By this time the word was out everywhere of the incident and result of Larry being fired from the job. Darryl Williams took me to my car, then I followed him to the new work sit. Tom Garza project manager shortly came over to the site to ask me how things are going. I told him that after the 4 or 5 hours of being here it seemed to be ok. I was under the impression that I was going to do the work the apprentice showed me which was being done by the journey man Iron workers at this site from hence forth.

On June 10th 2019 I knew what the jobs were, and knew how to perform the task. At the start of the shift I was never given any task or detail from the foreman to complete but the other workers were given eye contact and instructions to what their detail would be for the day. I didn't give up so for weeks I would come to each group of guys and would ask can I get in with the work detail?

Can I help with anything, answer would always be I don't need help, we don't need any help right now. No one would talk to me. I then initiated my own work, for example I would clear safety hazards, organize skids with parts on them, and pick up debris from areas and walkways, still informing my coworkers and foreman's that I have my tools and I'm available as an ironworker to do what is needed per the job description.

On June 14, 2019 I noticed that a crew was one man short and so I walked over to the three coworker's to include myself on the job. I was turned away by one worker who informed me that "I don't need no help" I was persistent to help with something, so I offered to bring over to the stair treads closer to them. One worker by the name Dave in the group said "sure Bud", thanks Dude.

Accordingly I proceeded to carry treads over to the worker. The coworker Dave watched me bring over the pieces, then while I was bringing the last piece over, Dave watched me the whole way, when I got 6 inches from him to set the piece down, he turned his back to me while I was bent over and passed gas loudly in my face. The other worker laughed out loudly at the incident that was so degrading, humiliating and an all-around shameful experience. I reported the incident to George the head foreman, he said he would talk to him about it. From June 10, 2019. I still have yet to receive any assignments or details Iron work related from my 2 foreman's to date. On June 26, 2019 I call Tom Garza, project manager on my lunch break, because he told me that if any problems arise to contact him, I have not received a call back yet. I complained to my head foreman George at my site about this situation. Retrieving trash everyday was not what I came all this way from Cleveland, Ohio to do. This is not iron-work. George the head foreman replied to me, that work is slow now. That insulted my intelligence. I also contacted my local union #17 head business agent Rich Jordan and Pat Burns about all that's going on here in Toledo and at the Cleveland Cliffs HBI plant. I've been told by Pat Burn that this is wrong & I should do something about this. They are black balling and isolating you Evie. He knows that I'm a good worker. Rich Jordon, referred our union attorney to me to be an adviser.

The Conclusion of this Letter.

On June 29, 2019 I mailed a certified letter to human resources stating my complaints. I found an address online, but recently found out from the post office that the letter has been returned back to me. So I did more research to obtain the correct address and now I re-mailed this certified letter back to Barton Malow human resources. The company has laid me off from the job on July 1,2019. What I have experienced was absolutely awful.

1. Retaliation-isolation

2. Scope of practice
3. Demeaning Harassment
4. Placed in a degrading environment, disrespected
5. My mental status altered including confusion
6. Health concerns
7. My civil right have been violated in the work force industry

Kindest Regards


Evelyn Williams

Case: 3:20-cv-02594-JGC Doc #: 14-2 Filed: 09/15/21 15 of 20. PageID #: 164

# THE IRONWORKER

AUGUST 2019



## UNITED RIGGERS AND ERECTORS:
### GROWING A CULTURE OF SAFETY, QUALITY AND EXPERTISE IN RIGGING

**IN THIS ISSUE**

Project Safety Success · 6
Be That One Guy · 35
Members and Locals Make a Difference · 28
Creating New Safety Opportunities · 41

# IRON WORKERS' BE THAT ONE GUY:
## DIVERSITY, HARASSMENT and RETENTION



Caress Pouncy, Local 63 (Chicago); Janet Dukic, Local 63 (Chicago); Zealla Flores, Local 397 (Tampa, Fla.); Vicki O'Leary, general organizer; Jazz "Japlan" Allen, Local 1 (Chicago); and Adriana Lopez, Local 63 (Chicago).

Supporting women and minority workers is critical in the construction industry. Women account for fewer than 4% of the construction trades workforce. Recruiting and retaining women and minorities is the best way to address the problem of a critical shortage of construction workers now and into the future. In order to grow the number of women in the workforce, retain and build female membership, building trades unions and construction contractors have to address institutional problems of gender discrimination and jobsite mistreatment.

The Iron Workers' Be That One Guy (BTOG) program addresses diversity matters and nondiscrimination rights in the workplace. Be That One Guy also highlights the safety issues surrounding bullying and harassment on construction jobsites and trains individual members and leadership to step up and intervene appropriately to address worksite discrimination and abuse like the safety issue it is. The program provides an overview of issues related to women in the trades, addressing diversity matters

'Vicki O'Leary has worked very hard to build a program that will inspire our leaders and members to 'See Something! Say Something!' in the spirit of respect at the workplace— to create a culture of truly caring about one another."

—Jeff Norris, Canadian safety coordinator



Shop steward course, Local 712: top row-Stuart Forman; Greg Friesen; Ron Hume; Graham Devlin; Harry Toor; Robert Schuller; Ravinder Sadhra; Mark Norum; Albert Ingle; Lorie Swanky; Sukhi Lally; Carlos Henriquez; Alex Madorsky; Brice Elliott; Gursewak Sidhu; Bill Puar; Ryan Wailand; Samuel Oseghale; Richard Barton; Jason Li; and Patrick McLean. Middle row-Jeff Norris, Canadian safety coordinator; Ken Learmont, president, Local 712; Shawn Webster; George Gregor; Harminder Sidhu; Catlin Chandler; Jeannette Lindquist; Ramil Fuerte; Michael Galimpin; Rob Kurta; Villy Gounder; Sebastian Boreczek; and Catalin Fota, business manager, Local 712. Bottom row-Dave Betinazzi; Reneros Conciso; Doug Dickie; Cliff Davis; Craig Turner; Steven Potusek; Richard Rose; and Eric Bohne, general organizer.

EXHIBIT 4



Jeff Norris, Canadian safety coordinator facilitating the Be That One Guy Program at the Ironworkers Shop Steward Program, Local 712.

and nondiscrimination rights in the workplace.

BTOG is tailored to union leaders, contractors and construction workers. For union and contractor leaders, the program illustrates the contractor, union and membership partnership to help end harassment and discrimination, including best practices on complaint, investigation and resolution procedures.

The Iron Workers' Be That One Guy Initiative Training Program is being developed as a hands-on training program for members, local unions, district councils and contractor management that illustrates best practices for bystander intervention on the jobsite to stop harassment as it happens. A pilot training BTOG session was offered to 41 members of Local 712 (Vancouver, British Columbia) at the Ironworkers Shop Steward Program on Jan. 29–30, 2019 in Surrey, British Columbia.

> "Our stewards are the extension of the local, therefore, representation, leadership and trust starts on the jobsite and the shop floor."
>
> —Eric Bohne, general organizer

# BULLYING, HARRASSMENT
## GREATEST WORKPLACE HAZARD OF OUR GENERATION

### Safety professionals shouldn't think it's just an HR issue
Written by Dave Rebbitt

Harassment and bullying have long lived in the shadows as something that happens to other people (usually women). It has usually been the purview of human resources.

In recent years that has been changing across Canada. Many thought gender discrimination, bullying and sexual harassment were stamped out in the 1970s and 1980s. It took the #MeToo movement to show us that people and workplaces have not changed all that much.

Some wonder why we never heard much about this topic in the decades before the #MeToo movement. The answer is both simple and disturbing. It has become standard practice for complainants to be given money to walk away. That sum of money usually comes with a nondisclosure agreement, and so they are silenced by the employer.

It appears that behind a wall of nondisclosure agreements and blame the victim mindset, bullying and harassment have flourished unchecked.

The #MeToo movement has been around for over a decade, and we have seen some changes in attitudes and a recognition that bullying and harassment are epidemic in the modern workplace. That is a statement that does take some convincing, but the evidence surrounds us.

For those of us in health and safety, this has been served up as the greatest workplace hazard of our generation. New Brunswick is the latest province to introduce legislation identifying harassment and bullying is a health and safety—a workplace—hazard. The latest legislation is not as prescriptive as some but does require that a code of practice is put into place.

The trend really started in 2012 when WorkSafeBC made policy changes to recognize that harassment could lead to a compensable mental injury. Saskatchewan went a step further in 2013, making it a duty of the employer to prevent harassment.

Ontario updated their legislation in 2016 and Alberta in 2018. In some provinces, the employer was required to prevent bullying harassment and it became a workplace hazard.

Alberta, in particular, gave supervisors a new duty under the OHS act to "ensure that none of the workers under the supervisor's supervision are subjected to or participate in harassment or violence at the worksite."

Heady stuff. Harassment and bullying is now illegal, a workplace hazard that must have specific procedures for dealing with reporting, investigations and prevention. Employers and supervisors who do not respond appropriately or make reasonable efforts to prevent bullying, harassment or workplace violence could be guilty of an offence.

## Not the usual hazard

Harassment is often based on perspective and emotional reaction. That does not make it any less real. For years, based on the work of Peter Sandman, we have seen the fourth dimension of risk as the emotional response. Feelings and emotions matter.

We often see hazards as physical conditions, things that can be fixed through the application of physical controls. Bullying and harassment are a risk that hides in plain sight. It is a poison that can undermine everything the safety profession seeks to accomplish. It is a risk that requires a different approach that many are simply not equipped for.

## Taking over from HR

Many safety people think that using the traditional reporting and investigation methodology will be fine with this new risk.

The problem with that is such reports do not trigger the necessary support or appropriate organizational action. HR has been doing a poor job of handling these cases for years. Without a more informed approach, safety professionals will not do much better.

When a person reports harassment, things like psychological first aid, worker safety and confidentiality are important. Does the organization have a plan to ensure a worker is safe, that they will be treated appropriately? How will the information be kept confidential? How will the formal complaint be put together?

Most organizations cannot answer all those questions. How will you gather the information to investigate? Should an internal investigation be conducted, or should an external investigator be brought in? How is the complainant involved in selecting the investigator? What instructions will be provided to the investigator?

Things seem complicated, but not so complicated as when there is a union involved. They become yet another active stakeholder in the process. The involvement of the union must be defined.

The health and safety committee may also need to be involved in the investigation, or investigations since a single complaint can spawn multiple investigations.

If this does not sound quick, that is because it isn't. A traditional reporting and investigative approach will not serve you, or the company, well. Even once the investigation is complete, the complainant can take issue with any part of it, including that the investigator was not properly qualified or experienced.

## New rights

Human rights legislation has always forbidden discrimination. Discrimination and harassment are closely tied together. Human rights commissions take some pains to draw the line and make clear that harassment is different from discrimination, although it may relate to discrimination on protected grounds under the human rights

legislation. Enforcing human rights is a lengthy process and well established.

We cannot say the same for the new environment around bullying and harassment. If this is a workplace hazard, then a worker can exercise their right to refuse work they believe is unsafe.

If you have work refusal, how will that be handled? How will the employer investigate the claim of a toxic workplace? Regulators even seem ill-equipped for these situations. How can you investigate feelings? How will you accommodate the complainant? How can an employer resolve the issue to make the workplace "safe?"

Of course, someone mistreated in the workplace and exercising their right to refuse is protected against discrimination or retaliatory action, whether the "hazard" is legitimate or not.

Workers have the right to refuse and the right to be protected from discrimination around this workplace hazard. That does not mean that such circumstances would not give rise to a human rights complaint.

### What about findings?

Many focus on what happens if the investigation shows there was bullying or harassment. The organization must have a clear idea of how it would deal with bullies or harassers. The remedies can range from counseling, job transfer, demotion or even dismissal for cause.

The major problem is when an investigation shows no harassment. Based on my personal experience, very few investigations show there was no harassment or inappropriate behavior. People seldom complain for no reason.

A finding of no harassment does not mean things can simply go back to normal. Now you actually do have a toxic workplace. People do not feel comfortable and do not necessarily feel safe. Counseling would likely be required for more than just one person. A bullying or harassment complaint can traumatize a workplace.

### Where there's one

Some reading this will think that it is not a problem in their company. Some think of a particular person who has the excuse that that is just the "way they are."

There are always signs of trouble in the organization, precursors. Bullies and harassers tend to be in a supervisory position, but not always. In North America, we like to promote people with ambition, driven to get results. Those are the people that tend to get promoted over others. Those are also the people that tend to be bullies or harassers. Leadership is a rare thing and we often mistake bullies for leaders because they get results. We often do not see the cost.

How can you tell that harassment may be a problem or that people may be bullied? The best indicator is a high turnover in a department or division. Transfer requests can also be an indicator. Victims take more sick days than other employees. Changes in performance are another indicator. Nothing kills a high performer more than harassment or bullying.

### Big deal?

I said at the start that this is the greatest workplace hazard of our generation. Let's look at a few numbers. In 2017-18 the Ontario Ministry of Labour tagged workplace violence and harassment as their number one workplace safety violation with 11,662 violations. Fall protection came second with 9,658.

In the first year after the Ontario legislative change, the Ministry of Labour saw complaints double, to 2,133 harassment complaints. Inspectors issued 2,164 orders. Harassment accounted for over 5% of all 2017 lost time claims in Ontario.

Not convinced? Well, with a mental injury attributable to harassment, the costs can be significant. When a claim is made to workers' compensation, the determination of whether harassment occurred is not as important as determining if there is an injury and if that injury resulted from work.

In Alberta, the average cost for a lost-time claim in 2018 was $10,548. Most claims for mental or psychological injury result in lost time. A claim for a psychological injury as the result of bullying or harassment would easily be more than $50,000. That should get anyone's attention.

Over 100 years ago society decided debilitating workplace injuries were unacceptable. In 2019 that now includes psychological injuries resulting from bullying and harassment.



Dave Rebbitt is the president of Rarebit Consulting providing services across Western Canada. With almost 30 years in health and safety, Rebbitt has built numerous health, safety and environment management systems along with some innovative processes and even developed specialized PPE. He is an experienced speaker and writer on a wide variety of topics. He also develops and instructs courses at the University of Alberta OHS program. He can be reached through rarebit.ca.



# Iron Workers' Local No. 17

1544 EAST 23RD STREET • CLEVELAND, OHIO 44114-4290
PHONE: 216/771-5558 • FAX (216) 771-8242 • 1-800-774-5558

AFFILIATED WITH AFL-CIO

November 19, 2019

Mr. Patrick Haney, Attorney at Law
The Chandra Law Firm
1265 West 6th Street, Suite 400
Cleveland, OH 44114

Dear Mr. Haney,

This letter shall serve to confirm, Iron Workers Local No 17 is in support of the claim against Barton Malow Company by member, Evelyn Williams.

Should you have further questions or concerns, please contact me at the union offices.

Sincerely,

Rich Jordan
FST/ Business Manager

RJ:cms

**EXHIBIT 5**